## Case No. 18,191.
### YTURBIDE v. UNITED STATES.

[Hoff. Land Cas. 273.] [1]

District Court, N. D. California. Dec. Term, 1857.[2]

MEXICAN LAND CLAIM — APPEAL FROM COMMISSIONERS.

The claimants omitted to file with the clerk a notice of their intention to prosecute the appeal from the decision of the board of land commissioners, within the six months prescribed by the act of 1852 [10 Stat. 99]. Held, that the court was without jurisdiction over the cause.

[Claim by the executor and heirs of Agustin de Yturbide for 400 square leagues in Upper California.]

Crockett & Page and Sloan & Hartman, for claimants.

P. Della Torre, U. S. Atty.

HOFFMAN, District Judge. The claim in this case having been rejected by the board, the transcript was duly filed in the clerk's office in this court on the second of June, 1855. No notice of appeal was filed by the claimants within six months thereafter as required by law, but on the 30th of April, 1856, a motion was made by the claimants' counsel for leave to file such notice nunc pro tunc, and to prosecute the appeal. No order or decree dismissing the appeal had been obtained by the district attorney, and the circumstances attending the omission to file the notice were such as to have induced the court at once to grant the application, if it had possessed any discretion on the subject. Much

doubt was however entertained by the court whether it could on any showing disregard what seemed the positive requirements of the statute. The motion was therefore, with the acquiescence of the district attorney, granted, in order that if the court had any discretion on the subject it might appear to have been exercised in favor of the application, and in order that testimony on the merits might be taken and the whole case submitted to the supreme court in such a form as to enable them finally to dispose of it when for the first time brought before them. It was however expressly mentioned, that the point as to the jurisdiction of the court to grant the motion was reserved until the final hearing, and that if the court should then be of opinion that it had no power to allow a notice of appeal to be filed after the expiration of six months from the filing of the transcript, the claim would be rejected for want of jurisdiction. This question must therefore be now disposed of.

By the twelfth section of the act of 1851 [9 Stat. 631], it was provided, that to entitle "either party to a review of the decision of the board of commissioners, notice of the intention to file a petition in the district court shall be entered on the journal of the board within sixty days after the decision of the claim has been notified to the parties, and the petition shall be filed in the district court within six months after the decision has been rendered." The mode above prescribed for removing the cause was altered by the act of 1852. In that law it is provided "that the commissioners shall cause a transcript of their proceedings and decision to be filed with the clerk of the district court, and that the filing of such transcript shall ipso facto operate as an appeal for the party against whom the decision shall have been rendered; that if such decision shall be against the private claimant it shall be his duty to file a notice within six months thereafter of his intention to prosecute the appeal, and if the decision shall be against the United States, it shall be the duty of the attorney general, within six months after receiving a copy of the transcript, (directed by the act to be sent to him by the board) to cause a notice to be filed with the clerk aforesaid that the appeal will be prosecuted by the United States. And on the failure of either party to file such notice with the clerk, the appeal shall be regarded as dismissed." The acts of 1824, 1828, and 1830 [4 Stat. 52, 284, 405], relating to lands in Missouri, Arkansas, and Florida, provided that all claims within their purview should be brought before the courts authorized to adjudicate upon them, within a specified period. Under these acts, it has always been held that the courts had no jurisdiction over petitions not presented within the time limited. In U. S. v. Marvin, 3 How. [44 U. S.] 623, it is said by the court: "The policy of congress was to settle the claims in as short a time as practicable, so as to enable the gov-

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[2] [Affirmed in 22 How. (63 U. S.) 290.]

ernment to sell the public lands, which could not be done with propriety until the private claims were ascertained. As these were many in number, and for large quantities, no choice was left to the government but their speedy settlement and severance from the public domain. Such has been its anxious policy throughout, as appears from almost every law passed on the subject." Similar observations are repeated in Villabolos v. U. S., 6 How. [47 U. S.] 91. In furtherance of this policy it was provided by the act of 1851, that all lands, the claims to which shall not be presented to the board within two years from the date of the act, shall be deemed part of the public domain, and after the decision, though an appeal was allowed, the party to be entitled to it was required to file a notice of his intention to prosecute within sixty days after the decision has been notified to him, and to file his petition in the district court within six months from the date of the decision. These provisions were clearly limitations. Nor will it be contended that under them either party could file a petition or otherwise prosecute his appeal after the expiration of the six months prescribed by law.

The alteration in the mode of taking the appeal made by the law of 1852 above referred to, had for its principal object to relieve the claimants of the burden and expense of procuring copies of the transcripts to be made, and to allow to the attorney general a longer time to determine whether an appeal should be prosecuted than the sixty days within which the notice was required to be entered on the journals of the board. It was accordingly provided that the board should cause the transcripts to be made out and filed in the district court, and that such filing should ipso facto operate as an appeal. As, however, congress did not mean to enact that every case should be appealed, whether the party against whom the decision had been made desired it or not, and as the provisional appeal could not continue forever, the same period for filing the notice of an intention to prosecute it, or to profit by the appeal which had thus by operation of law been taken, was prescribed, as had previously been assigned for filing the petition in the district court. It was therefore not only made the duty of the attorney general or the claimant to file such notice within the time limited, but it was provided that on the failure of either party to file such a notice, the appeal "should be regarded as dismissed."

We think that by these provisions congress intended to prescribe a rule of action to the court, which it is not at liberty to evade or to disregard. That some limitation on the rights of appeal to a definite period is necessary in all cases, is obvious. That it is peculiarly necessary in this class of cases, and that it has been restricted within limits much narrower than those allowed in ordinary suits by all the acts of congress previously passed, is equally evident. When, therefore, we find the act of 1851 allowing a time for appeal still shorter than that prescribed in previous acts, it is difficult to believe that congress, by the amended act of 1852, intended to depart from a policy so well settled, and so necessary, and to permit the court to allow the appeal to be prosecuted whenever in its judgment the party desirous of appealing might sufficiently excuse his omission. If it be said that hard cases may arise, and that such a power might with safety and propriety be committed to the courts, it may be answered—(1) that hard cases must always occur under any general rule of law, however beneficent or necessary it may be; and (2) that courts have never felt themselves at liberty to dispense with express provisions of law, whether in statutes of limitations or in those regulating appeals or in others, upon any equitable ground. To this effect is the language of the supreme court in Saltmarsh v. Tuthill, 12 How. [53 U. S.] 389, and in Bank of Alabama v. Dalton, 9 How. [50 U. S.] 522, the court decided that it could not engraft on a statute of limitations an exception not found therein, however reasonable and just it might be.

It is argued that the case at bar is to be distinguished from those under the statutes of 1824, 1828 and 1830, inasmuch as the latter limited the time within which the petition was to be filed, which was the commencement of the suit; whereas, by the act of 1852 the filing of the transcript ipso facto constitutes an appeal. The court therefore has jurisdiction of the suit, and the notice is not necessary to confer it. Hence, it is argued, the filing of the notice is not indispensable to the retention of the cause in court after it has been properly brought there. It is true that the filing of the transcript operates as an appeal, and the cause is properly in court. But the appeal so taken and the jurisdiction so acquired, are obviously but temporary and provisional. The very law which declares that the filing of the transcript shall operate as an appeal, prescribes the period and the conditions of its continuance in court, and though the appeal is pending and the court has jurisdiction for six months, yet if during that time no notice be filed, the same law requires that the appeal shall be deemed to be no longer pending, or that it shall be regarded as dismissed. The law which gave vitality to the appeal during the period limited, peremptorily deprives it of life unless certain conditions necessary to continue its existence be fulfilled. Such we consider would be the construction of statutory provisions like these, even if they related to ordinary suits before a court of general and superior jurisdiction. But they should a fortiori be so construed in this case, where the court has but a special and limited jurisdiction de-

rived from the statute alone, and to be exercised, like the jurisdiction of an inferior court, only in the manner and to the extent prescribed by the statute.

The claimants' counsel have adduced in support of their construction of the statute, an illustration from the practice of the court of chancery of New York. It was by the rules of that court provided, that if the plaintiff did not reply within a certain time, "he should be precluded from replying." The court, however, under special circumstances, grants leave to file a replication. But this rule is obviously a mere rule of practice framed by the court for its own government. Such rules, even when prescribed by a superior tribunal, the court has the power to modify to meet the exigencies of special cases—a power which it does not possess over the positive requirements of a statute. [Poultney v. City of La Fayette] 12 Pet. [37 U. S.] 472; [Saltmarsh v. Tuthill] 12 How. [53 U. S.] 389; [Bank of Alabama v. Dalton] 9 How. [50 U. S.] 522. Moreover the practice under this rule shows that it was merely intended to preclude the right of replying as of course, but that it was not intended to take away the right in all cases. The court which made the rule expounds its intention and meaning, and establishes the practice under it.

But if the views heretofore expressed be correct, the provision in the act of 1852 is not to be limited to a rule of practice established by the court, but is a statute of limitations enacted by the legislature. It prescribes a period within which the party is to adopt the appeal which the government has provisionally taken for him, and which is allowed to be pending and awaiting his action for a specified time. His failure to adopt this appeal by filing the required notice, puts him in the same position as if he had been himself required to take it within the same period, and had omitted to do so.

We are very sensible of the hardship of this and similar cases. We regret that we have no power to relieve them. Under the construction we have felt compelled to give to the statute, we have no alternative but to dismiss the claim.

[The decree dismissing the appeal was affirmed by the supreme court. 22 How. (63 U. S.) 290.]